# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT COVINGTON

**CIVIL ACTION NO. 16-114-DLB-CJS**

**FREDERICK LEE DAVIS**                                              **PETITIONER**


**v.**                             **REPORT AND RECOMMENDATION**


**SCOTT JORDAN, Warden**                                           **RESPONDENT**
**Luther Luckett Correctional Complex**


**\* \* \* \* \* \* \* \* \* \***

Petitioner Frederick Lee Davis, an inmate at the Luther Luckett Correctional Complex in LaGrange, Kentucky,[1] filed the instant *pro se* Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus on June 21, 2016.[2] (R. 1). In the Petition, Davis asserts that the state trial court improperly ordered a retrial of the penalty phase, and he also asserts ineffective assistance of counsel claims. (*See id.*). Respondent filed an Answer (R. 13), to which Petitioner filed a Reply (R. 16). The matter is ripe for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons set forth below, it will be **recommended** that Petitioner Davis's § 2254 Petition be **denied**.

---

[1] When Davis originally filed his Petition, he was incarcerated at the Kentucky State Reformatory, where Aaron Smith was previously the Warden. Davis recently notified the Court that he was transferred to the Luther Luckett Correctional Complex (*see* R. 20), where Scott Jordan is the Warden. The only proper respondent to a habeas petition is the petitioner's custodian. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts. Therefore, the Court substitutes Scott Jordan, Warden, Luther Luckett Correctional Complex, in the case caption, which substitution shall be recorded by the Court Clerk on the case docket sheet.

[2] Davis's § 2254 Petition was docketed with this Court on June 29, 2016; however, under the "prisoner mailbox rule," the Petition is considered filed on June 21, 2016, the date Petitioner placed it in the prison mail system. (*See* R. 1-3, at 77); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 2008, a Kenton County, Kentucky Grand Jury returned an Indictment charging Petitioner with murder and attempted murder.  (R. 13-2, at 4-5).  The case went to trial, and on September 15, 2009, the jury convicted Davis of first-degree manslaughter and first-degree attempted manslaughter.  *Davis v. Commonwealth*, 365 S.W.3d 920, 921 (Ky. 2012); (R. 13-2, at 28).  Following the penalty phase of trial, the jury recommended the maximum sentence of twenty years of imprisonment for manslaughter and ten years of imprisonment for attempted manslaughter, to run consecutively.  *Davis*, 365 S.W.3d at 291.  However, before Davis was sentenced, the trial judge identified an error with the jury verdict form.  *Id.*  The jury instructions stated, "[w]e recommend that the punishment fixed for the Defendant under Counts One and Two be served concurrently (at the same time) or consecutively (one after the other), **in whole or in part** as follows . . . ."  *Id.*  "But the verdict form gave the jury only two options; it could recommend the sentences run concurrently or consecutively."  *Id.*  Thus, the trial judge found that the form failed to provide jurors with the third option contained in the instructions: to run the two sentences partially consecutively and partially concurrently, *in whole or in part*.  *Id.*

Because of this error with the jury instructions, the trial judge empaneled a new jury for a second recommendation as to whether the ten and twenty-year sentences should run concurrently or consecutively, in whole or in part.  *Id.*  The second jury was informed of the prior jury's verdict and recommended sentence, read a summary of the case that had been agreed upon by counsel, and was also read the indictment and the corrected jury instructions.  (R. 13-2, at 45).  In addition, the jury was shown the taped testimony of the two psychologists who had testified at trial, as well as video of all of the penalty phase testimony, including testimony by a probation employee, the widow of the deceased man Davis was charged with murdering, and Davis himself.  (*Id.*).

2

After deliberating for fifteen minutes, the second jury, like the first, recommended that the sentences of twenty and ten years run consecutively for a total of thirty years. (*Id.*). The trial court sentenced Davis in accordance with this recommendation and entered the judgment on January 14, 2010. (*Id.*; *Id.* at 28-30).

A recitation of the facts, as stipulated by the parties, is as follows:

Fred Davis and Pam Sanders met at Holmes High School in the 1980's. Shortly thereafter they began a relationship and later became parents of two daughters, one whom is attending college and the other whom is a student at Holmes High School. Mr. Davis and Ms. Sanders lived and raised their daughters together until approximately 2005, when they separated. Throughout that period Ms. Sanders had worked at the Post Office while Mr. Davis maintained several apartment buildings that he owned for a living.

In 2005, Ms. Sanders and Mr. Davis separated and the children went to live with her in Ohio. The children kept in regular contact and frequently visited Mr. Davis' mother's home. When the separation occurred Ms. Sanders was attending the New St. Paul Missionary Baptist Church in Cincinnati, Ohio, where the victims Donald Fairbanks and Dowdell Cobb were the Pastor and Deacon respectively. She became involved in bible study and started attending sessions at the church several times per week. Over the next several years Mr. Davis grew suspicious of the relationship between Ms. Sanders and Reverend Fairbanks. Mr. Davis repeatedly contacted Reverend Fairbanks' wife about what he thought was going on between Ms. Sanders and the Reverend. On multiple occasions, Mr. Davis showed up at the church intending to confront the Reverend about what he believed to be going on with Ms. Sanders. One of those occasions Mr. Davis was stopped by Dowdell Cobb and Mr. Cobb asked him to leave the church. Mr. Cobb recognized Mr. Davis from having testified at a previous hearing involving Mr. Davis and the Reverend where Mr. Davis was ultimately charged with disorderly conduct for his actions toward the Reverend.

During this time Mr. Davis grew increasingly depressed about Ms. Sanders no longer being a part of his life. Mr. Davis' appearance, hygiene, and mood all took a noticeable turn for the worse during this period. He also became more withdrawn and less involved in his daughters' lives as a result. Mr. Davis wanted to rekindle his relationship with Ms. Sanders but she had moved on.

Throughout 2008 and leading up to November, 2008, Mr. Davis' mood had worsened. For the first time Mr. Davis did not see his daughters on Father's Day 2008. Mr. Davis believed that Pam's relationship with the Reverend was the reason for his problems.

On November 1, 2008, a funeral was being held for Pam Sanders' grandmother at the 9th Street Baptist Church in Covington, Kentucky. Reverend Fairbanks and Dowdell Cobb planned to deliver a church proclamation to Ms. Sanders as a member of their congregation for the passing of her grandmother at the funeral. Mr. Davis was aware that his daughters would be attending their great grandmother's funeral. There was no evidence that Mr. Davis knew Reverend Fairbanks would be attending the funeral.

Around 10:41 a.m. Michael Berry called the Covington Police to report a suspicious vehicle. Mr. Berry had been returning home from the grocery to his home on Garrard Street when he noticed Mr. Davis in his truck stopped in the street blocking a lane of traffic. He observed the truck situated in the street for approximately 30 minutes before he called the police. From where the truck was situated, Mr. Davis could see across Randolph Park to the funeral being held at 9th Street Baptist Church.

Approximately 5 minutes after Michael Berry's call to the police about Mr. Davis' vehicle, the Covington Police received several 911 calls reporting a shooting at the 9th Street Baptist Church with multiple victims.

Mr. Davis had moved his truck from where Mr. Berry had seen it on Garrard Street and parked it around the corner where Officers found it. Inside the truck officers discovered a holster hidden underneath the dashboard. Mr. Davis then proceeded on foot across Randolph Park to 9th Street Baptist Church. When Mr. Davis crossed 9th Street, he approached Reverend Fairbanks holding a handgun. He fired a shot, striking Reverend Fairbanks in the chest. Mr. Davis then turned his attention towards Mr. Cobb and gave chase. Mr. Cobb tried to make a run for the church when Mr. Davis shot him. Mr. Davis then turned his attention back to Reverend Fairbanks, whom at this point had run approximately 50 yards before collapsing in Randolph Park. Mr. Davis stood over Reverend Fairbanks who was laying in the park. There were some unintelligible words exchanged between them whereupon Mr. Davis fired a second shot into Mr. Fairbanks, striking him in the knee. By this time Deacon Cobb had made his way into the church basement where a registered nurse treated him until paramedics arrived.

Officer Bill Webster was the first officer to arrive on the scene and as he approached he saw Mr. Davis on the sidewalk. Mr. Davis told Officer Webster that he was the person they were looking for and that the gun was located several feet behind him in the grass. Officer Webster found the weapon in the grass where Mr. Davis had pointed.

Reverend Fairbanks was transported to the hospital where he was pronounced dead as a result of the gun shot wound to the chest. Deacon Cobb was rushed to the hospital where he underwent surgery to stop the internal bleeding that the gun shot would have caused. After several months of recuperation and physical therapy,

Dowdell Cobb was able to return to work for Duke Energy but still experiences some pain as a result of the shooting.

(R. 13-2, at 57-59).

Davis, represented by an Assistant Public Advocate, appealed his judgment to the Kentucky Supreme Court arguing that the trial court acted improperly when it empaneled a second jury to determine whether the sentences should run concurrently or consecutively, rather than ordering that the sentences run concurrently based upon Kentucky caselaw. (*Id.* at 33, 43-44). On May 17, 2012, the Supreme Court of Kentucky affirmed Davis's judgment, finding the trial court acted within its discretion when it empaneled a second penalty jury. *Davis*, 365 S.W.3d at 923. Davis did not appeal this ruling to the United States Supreme Court.

On August 13, 2012, Davis filed a *pro se* motion in the Kenton Circuit Court pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42, raising several ineffective assistance of counsel claims. (R. 13-2, at 84). Following the appointment of counsel from the Kentucky Department of Public Advocacy, Davis filed, by counsel, a supplement to his RCr 11.42 motion adding additional ineffective assistance of counsel claims. (*Id.* at 108, 143). On May 16, 2013, the Kenton Circuit Court denied the claims Davis raised in his *pro se* RCr 11.42 motion, as well as those raised by counsel in the supplement. (*Id.* at 184). At this point, the Kentucky Court of Appeals allowed counsel to withdraw, and Davis proceeded to appeal the trial court's denial of his RCr 11.42 motion to the Kentucky Court of Appeals *pro se*. (*Id.* at 226, 227). The Kentucky Court of Appeals affirmed the Kenton Circuit Court's denial of Davis's RCr 11.42 motion on December 24, 2014. (*Id.* at 300). Davis sought discretionary review from the Kentucky Supreme Court but was denied. (*Id.* at 342). On June 21, 2016, Davis filed the instant *pro se* § 2254 Petition in which he asserts the following claims:

1.      Petitioner's due process and Sixth Amendment rights were violated when the trial court improperly ordered a retrial of the penalty phase.  (R. 1, at 6, 11).

2.      Petitioner received ineffective assistance of counsel when trial counsel failed to brief the sentencing error issue.  (*Id.* at 6, 8, 11).

3.      Petitioner received ineffective assistance of counsel when trial counsel failed to object to or elicited the following witness testimony, which impacted the jury's sentencing recommendation:

      a.      Dr. Edward Connor's testimony regarding Davis's credibility and truthfulness,

      b.      Dr. Timothy Allen's testimony that Davis did not suffer from Extreme Emotional Disturbance ("EED"), and

      c.      Pam Sanders's testimony about an emergency protective order she took out on Davis.  (*Id.* at 7-8, 11, 13, 14).

4.      Petitioner received ineffective assistance of counsel when trial counsel failed to object to the prosecutor's remarks during the sentencing phase, asking the jury not to give Davis "another break."  (*Id.* at 8, 11, 13, 14).

5.      Petitioner received ineffective assistance of appellate counsel when counsel failed to raise the previous claim on appeal.  (*Id.* at 8, 10, 14).[3]

## II.    ANALYSIS

### A.    Governing Legal Standard

Davis' habeas petition is governed by the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA") which allows courts to grant habeas relief only when a state court's

adjudication of the claim:

1.      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[3] Davis's Petition asserts four "Grounds" that are made up of bits and pieces of language pulled verbatim from his previous state court filings.  Out of this text, the Warden has identified the above-listed claims.  (*See* R. 13, at 4-5).  Giving Davis's *pro se* Petition the liberal construction it is entitled to, the Court agrees with the Warden's identification of the listed claims. *See Mills v. Larose*, 693 F. App'x 411, 414 (6th Cir. 2017) (citing *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985)).  Moreover, Davis does not refute this interpretation in his Reply.

2.      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). The petitioner carries the burden of proof. *Id.* "[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's adjudication of a claim is considered "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts." *Van Tran v. Colson*, 764 F.3d 594, 604 (6th Cir. 2014) (citing *Brown v. Payton*, 544 U.S. 133, 141 (2005)).

A state court's decision involves an "unreasonable application" of federal law when "the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts governing the petitioner's case." *Henley v. Bell*, 487 F.3d 379, 384 (6th Cir. 2007) (citing *Williams*, 529 U.S. at 412-13)). Under § 2254(d)(1), "clearly established federal law" includes only holdings of the Supreme Court; and in order for a state prisoner to demonstrate application of such a holding was "unreasonable," he must show that the state court's holding "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 415 (2014). Thus, the application must be "objectively unreasonable, not merely wrong; even 'clear error' will not suffice." *Id.* at 419-20 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). In addition, factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

Here, all but one of the claims Davis presents in his Petition asserts ineffective assistance of counsel. For an attorney's assistance to be constitutionally adequate, it need not be free from error. *McMann v. Richardson*, 397 U.S. 759, 771-74 (1970). Rather, "the right to counsel is the right to the effective assistance of counsel." *Id.* at 771 n.14. An attorney's assistance is considered ineffective when her performance falls below that of a "reasonably competent attorney." *Id.* at 770-71. The United States Supreme Court held in *Strickland v. Washington* that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686 (1984).

Under *Strickland,* the two-part test to determine whether a criminal defendant has been deprived of effective assistance of counsel requires a showing of (1) constitutionally deficient performance and (2) prejudice. *Id.* To meet the first prong, a defendant must show by a preponderance of the evidence that counsel's representation was so deficient that it fell "below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all of the circumstances." *Id.* at 687-88. The defendant must demonstrate this by pointing to specific errors in counsel's performance, and the reviewing court must subject the allegations to rigorous scrutiny, determining "whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

Courts assessing counsel's performance apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In addition, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

and to evaluate the conduct from counsel's perspective at the time." *Id.* To meet the second prong of the *Strickland* test, a defendant must show that counsel's constitutionally deficient performance actually prejudiced the defense, and, as a result, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before judge or jury." *Id.* at 695.

Defendant must prove both prongs of the two-prong *Strickland* test to meet his burden of establishing that his trial counsel's assistance was constitutionally ineffective. *Id.* at 697. While a defendant must prove each element of the two-part *Strickland* test to establish an ineffective assistance of counsel claim, courts are not required to conduct an analysis under both *Strickland* prongs. *Id.* Courts may approach the *Strickland* analysis in any order, and an insufficient showing of either prong ends the inquiry; if the Court finds that Defendant cannot meet one *Strickland* prong, it need not address the second. *Id.*

This "highly deferential" standard of *Strickland v. Washington* is "doubly so" in the context of a § 2254 petition. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). When the deferential standards under *Strickland* and § 2254(d) "apply in tandem" "[t]he question is not whether counsel's actions were reasonable" but rather, "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*; *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable— a substantially higher threshold.") (internal quotation omitted). Furthermore, "because *Strickland's* is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 112.

With these governing legal standards in mind, the Court turns to Petitioner's claims.

**B.      The trial court's retrial of the penalty phase was not improper.**

Petitioner first asserts that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court improperly ordered a retrial of the penalty phase. (R. 1, at 6, 11). As discussed above, at the close of Petitioner's trial but before sentencing, the trial judge identified an error with the jury sentencing form, which neglected to provide jurors the option—stated in the sentencing instructions—of running Davis's sentences consecutively or concurrently *in whole or in part*. *Davis*, 365 S.W.3d at 921. The trial judge requested briefing from Davis's trial counsel and the Commonwealth on the issue of whether an error occurred and on a possible remedy. *Id.* at 923. However, neither side submitted a brief, and so the judge determined *sua sponte* to empanel a second jury for the narrow purpose of providing a new recommendation as to whether the sentences should run consecutively or concurrently. *Id.*

Davis challenged the trial court's decision to empanel a second penalty jury on direct appeal to the Kentucky Supreme Court, where he argued that the court should have ordered that the sentences run concurrently to correct the error in accordance with Kentucky caselaw. (R. 13-2, at 46-49). Davis also challenged the manner in which the second penalty phase was conducted. (*Id.*). The Kentucky Supreme Court affirmed Davis's judgment and found that the trial court acted within its discretion when it empaneled a new jury before sentencing. *Davis*, 365 S.W.3d at 922. The Kentucky Supreme Court held that "[b]y its action, the trial court sought to protect Davis's due process rights and prevent a potentially erroneous judgment." *Id.* at 923. In addition, the Kentucky Supreme Court did not find anything "unfair or erroneous" in the way the jury was conducted, in particular finding that the trial court acted within its discretion by requiring an agreed summary of the evidence from Davis and the Commonwealth. *Id.* at 924.

The Respondent argues that habeas relief based on this claim should be denied, because Davis based his objection on state-law grounds. (R. 13, at 22-23). Federal courts may only review claims on habeas review that the petitioner first raised in state court. 28 U.S.C. § 2254(b); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). For a claim to be considered exhausted, the petitioner must have "fairly presented" the "substance" of his federal claim in state court. *Alley*, 307 F.3d at 386 (quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982)); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts.") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). This means that the petitioner must "assert both the *legal* and factual basis for his or her claim" in state court prior to raising the issue in a federal habeas petition. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("[T]he doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court."); *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984) ("[T]he habeas petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.").

When considering whether a petitioner properly raised the habeas claim in state court, courts look for the following indicators: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton*, 349 F.3d at 877 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987)). Furthermore, while "general allegations of the denial of . . . 'due process' have been held insufficient to 'fairly present' federal constitutional claims . .

. a petitioner need not recite 'book and verse on the federal constitution.'" *Newton*, 349 F.3d at 877 (quoting *Koontz*, 731 F.2d at 369).

Davis failed to fairly present this claim before the Kentucky Supreme Court. Petitioner's appellate brief challenging the trial court's decision to empanel a second penalty jury stated generally that sentencing errors "affect due process," yet the substance of the claim was based upon Kentucky law. (R. 13-2, at 43). Davis argued in state court that Kentucky Revised Statute ("KRS") 532.055(2) requires the jury to provide a sentencing recommendation, and that the trial court should have corrected the erroneous recommendation in his case by ordering the sentences to run concurrently, in accordance with the Kentucky case of *Stoker v. Commonwealth*, 828 S.W.2d 619 (Ky. 1992). (*Id.* at 45-47). Davis further argued the second penalty phase was "not done in accordance with the dictates of this Court" as set forth in another Kentucky case, *Boone v. Commonwealth*, 821 S.W.2d 813 (Ky. 1992), and that requiring both sides to provide a stipulated summary by "threatening a three day replay of the original trial" was "unfair." (*Id.* at 48-49). Considering the factors listed above, Davis relied exclusively on state cases that do not themselves employ federal constitutional law analysis and he did not use language or allege facts "within the mainstream of constitutional law." *Newton*, 349 F.3d at 877. In addition, the general allegation of a "due process" violation was insufficient to constitute fair presentation of the habeas claim. *Id.*

Because Davis failed to fairly present his first ground for habeas relief in state court, the claim was not properly exhausted. *Alley*, 307 F.3d at 386. Moreover, when a petitioner has failed to exhaust available state court remedies, and the remedy is no longer available under state law, the claim is procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n.2 (1991); *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *Williams v. Anderson*, 460 F.3d 789, 808 (6th Cir. 2006).

Here, Davis did not raise the due process or Sixth Amendment claims on direct appeal and he is now procedurally barred from doing so.

A federal court may nevertheless hear a claim that has been procedurally defaulted upon a showing by the petitioner of cause and prejudice for the default or actual innocence. *Coleman*, 501 U.S. at 731-32; *Hand v. Houk*, 871 F.3d 390, 407 (6th Cir. 2017); *Seymore v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). In his Reply brief, Petitioner states that this claim is not barred from review pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012), *Trevino v. Thaler*, 569 U.S. 413 (2013), and *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015). The trio of cases Petitioner cites relate to a habeas petitioner's ability to demonstrate "cause" to excuse procedural default of an ineffective assistance of counsel claim, if in the initial-review collateral proceeding in state court, the petitioner was not represented by counsel or his counsel was deficient. *See Woolbright*, 791 F.3d at 631. Liberally construing Petitioner's statement, it can be inferred that Davis is arguing his appellate counsel's failure to raise the federal constitutional claims related to the empaneling of a second jury on direct appeal constitutes "cause" for his procedural default of this claim.

Petitioner is correct that ineffective assistance of counsel may provide sufficient cause and prejudice to excuse procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012) (citing *McCleskey v. Zant*, 499 U.S. 467, 492 (1991)). This assessment of "cause and prejudice" requires examining the merits of the ineffective assistance of appellate counsel claim. *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007). An attorney's assistance is considered constitutionally ineffective when her performance falls below that of a "reasonably competent attorney." *McMann v. Richardson*, 397 U.S. 759, 771-71 (1970). As previously noted in Section II.A., the United States Supreme Court in *Strickland v. Washington* established a two-part test to determine whether

a criminal defendant has been deprived of effective assistance of counsel, requiring a showing of (1) constitutionally deficient performance and (2) prejudice. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). To meet the first prong, a defendant must show by a preponderance of the evidence that counsel's representation was so deficient that it fell "below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all of the circumstances." *Id.* at 687-88.

In order to demonstrate prejudice when challenging appellate counsel's failure to raise an issue on appeal, a petitioner must demonstrate "a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Ivory*, 509 F.3d at 294 (citing *Howard v. Bouchard*, 405 F.3d 459, 478 (6th Cir. 2005)). Further, appellate counsel need not raise every possible claim on appeal in order to be effective. *Dufresne v. Palmer*, 876 F.3d 248, 257 (6th Cir. 2017) (citing *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004)). "Only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Id.* (quoting *Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008)).

While it can be understood that Davis is asserting that review of his first habeas claim is not barred due to his appellate counsel's failure to raise the issue, he does not provide any relevant support for this assertion. (*See* R. 16, at 4-5). Davis attempts to demonstrate the merits of the federal claims he feels appellate counsel should have raised regarding the second penalty phase. (*Id.*). Yet, his arguments continue to be centered on state law, again citing to KRS 532.055(2) and Kentucky caselaw. (*Id.*). Davis has failed to present any viable federal claims his appellate counsel could have raised with respect to the second penalty jury. As the Respondent points out, there is no constitutional right to a jury determination of sentencing under the Sixth Amendment. *See Oregon v. Ice*, 55 U.S. 160, 163 (2009); *see also Clemons v. Mississippi*, 494 U.S. 738, 746

(1990); (R. 13, at 25). In addition, the U.S. Supreme Court has specifically held that there is no constitutional right to a jury determination regarding whether multiple sentences are to run consecutively or concurrently. *Ice*, 55 U.S. at 168-69 (noting that historically "the jury played no role in the decision to impose sentences consecutively or concurrently"). Moreover, the manner in which state courts go about administering the sentencing process among the judge and jury has traditionally been left to the states' discretion. *Id.*

Thus, the trial court's decision to empanel a second penalty jury did not implicate Davis's Sixth Amendment rights. Similarly, the manner in which the trial court ran the second penalty phase, including requiring a joint summary of the evidence, did not implicate federal due process concerns under the Fourteenth Amendment. Accordingly, Davis wholly failed to demonstrate that his appellate counsel was deficient for not challenging the second penalty phase on appeal based on federal constitutional grounds, and there is no reasonable probability the outcome of Davis's appeal would have been different had counsel raised those meritless claims. Because Davis has failed to demonstrate cause and prejudice and did not allege actual innocence, his first ground for relief is procedurally defaulted.

As a further note, although the Respondent did not expressly raise procedural default of this issue, the Court finds that the Petitioner had sufficient notice of default based upon his Reply. District courts are permitted to consider the procedural default of a state prisoner's habeas petition *sua sponte*, as long as a petitioner is provided notice and an opportunity to show why the limitation does not bar the petition. *See Day v. McDonough*, 547 U.S. 198, 210 (2006); *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000). The first part of the Respondent's Response states that the Respondent does not assert any defenses based on exhaustion or procedural default. (R. 13, at 6-7). However, as discussed above, the Respondent proceeds to argue that Petitioner's first claim

"is an issue of state law" specifically noting that Davis's brief on direct appeal relied exclusively on state-law grounds. (*Id.* at 26). Despite these statements, the Respondent did not go so far as to expressly assert that Davis did not "fairly present" the claim in state court, rendering it procedurally defaulted.

Nevertheless, Petitioner apparently recognized the basis for the Respondent's concerns, and took it upon himself to refute procedural default in his Reply. Thus, the Court finds that the Respondent's statements regarding the state-law nature of Petitioner's first claim sufficiently alerted Petitioner to the possibility of the Court finding that his first habeas claim was procedurally defaulted. Petitioner then took advantage of his opportunity to reply to the Respondent's Response to address the issue of procedural default. Moreover, even if the Respondent's statements did not constitute sufficient notice of the possibility of procedural default, this Report and Recommendation provides the requisite notice and allows for further objections to this defense. *See Gordon v. Voorhies*, No. 2:08-cv-1098, 2010 WL 1032370, at *5 (S.D. Ohio Mar. 17, 2010). Accordingly, Davis's first claim for habeas relief should be denied as procedurally defaulted.

Lastly, based on the above discussion, Davis's first claim alternatively fails on the merits. Because Supreme Court precedent informs that there is no constitutional right to a jury determination of sentencing and that administration of the sentencing process has been traditionally left to the states, the Kentucky Supreme Court's holding that the judge acted within his discretion in deciding to empanel a second penalty jury is not contrary to clearly established federal law. *See Ice*, 55 U.S. at 163, 168-69 (2009).

### C. Trial counsel did not render ineffective assistance by failing to brief the sentencing error.

Next, Petitioner asserts that he received ineffective assistance of counsel when trial counsel failed to brief the sentencing error. (R. 1, at 6, 9, 11). Following the first jury's sentencing

recommendation, but before sentencing, the judge identified an error in the verdict form, which failed to provide the jury with the option of running Davis's two sentences concurrently or consecutively *in whole or in part*. *Davis*, 365 S.W.3d at 921. After the trial judge identified the error, "the trial judge requested briefing from Davis and the Commonwealth regarding whether error occurred and to determine a reasonable and fair remedy." *Id.* at 923. However, neither party filed briefing on the issue. *Id.* Without input from counsel, the trial judge determined that the best way to correct the error would be to empanel a second jury for the limited purpose of recommending whether the sentences should run consecutively or concurrently. *Id.*

In determining whether the state court reasonably applied *Strickland*, courts examine the "last reasoned opinion." *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (6th Cir. 1991). In this case, Petitioner raised the ineffective assistance of counsel claims he now asserts in his § 2254 Petition in his RCr 11.42 motion and subsequent supplement filed after he retained counsel. (R. 13-2, at 84, 108, 143). After the trial court denied Petitioner's RCr 11.42 motion (*id.* at 184), Davis appealed the decision *pro se* to the Kentucky Court of Appeals, which affirmed the trial court's ruling in a reasoned opinion. (*Id.* at 227, 300). The Supreme Court of Kentucky denied discretionary review. (*Id.* at 342). Thus, the claims were properly exhausted, and this Court will assess the opinion of the Kentucky Court of Appeals, as it is the last-reasoned opinion to address Petitioner's remaining claims.

As pointed out, Davis first raised the argument that trial counsel was deficient for failing to brief the sentencing error in his *pro se* RCr 11.42 motion to the Kenton Circuit Court. (R. 13-2, at 96). However, his brief to the trial court did not allege any "prejudice" under the *Strickland* framework. After counsel was appointed, Davis's counsel filed a supplement to his RCr 11.42 motion. (*Id.* at 143). Yet the supplement did not bolster, or even discuss, this claim. In his *pro se*

brief appealing the denial of his RCr 11.42 motion, Davis again asserted that trial counsel "abandoned" him when he failed to brief the sentencing error and, here, Davis alleged prejudice for the first time by stating generally that "trial counsels [sic] failure to brief any potential sentencing errors as ordered by the trial court . . . prejudiced the defendant." (*Id.* at 243). Davis went on to state that "after the Defendant was property [sic] sentenced during the first sentencing phase, Counsel allowed defendant to be resentence[d] under an erroneous jury instruction[]." (*Id.* at 244).

In its opinion denying Davis's appeal of the denial of his RCr 11.42 motion, the Kentucky Court of Appeals correctly identified the *Strickland* test early on in its opinion, noting that Davis was required to show "(1) counsel's performance was deficient in that it fell outside the wide range of reasonable processional assistance; and (2) the deficient performance prejudiced his defense." (*Id.* at 305) (internal quotations omitted). In addressing Davis's claim that counsel abandoned him by not submitting the brief ordered by the trial court regarding the sentencing error, the court of appeals held as follows:

> [B]oth the first and the second sentencing juries reached the same conclusion: That Davis should be sentenced to twenty years of imprisonment for the first-degree manslaughter conviction and ten years of imprisonment for the first-degree attempted manslaughter conviction, and that the two sentences should be served consecutively to each other. Thus, even if counsel performed deficiently in failing to file a brief on the issue, Davis cannot show that his defense was prejudiced by the failure to file the brief because the sentence he received was the same by either jury.

(*Id.* at 308). In short, the Kentucky Court of Appeals found Davis did not demonstrate prejudice because both penalty juries reached the same outcome. At first blush it might appear as if the court did not properly apply the prejudice prong of *Strickland*, which requires a court to consider whether there is a reasonable probability, absent counsel's error, that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. While both juries did ultimately recommend

that the sentences run consecutively, this does not necessarily mean there is no reasonable probability the outcome would have been different had Davis's trial counsel briefed the issue; possibly recommending another remedy to the court, such as that the trial judge order the sentences to run concurrently or that a second jury be empaneled to issue a recommendation on both the length of the sentences and whether they should run concurrently or consecutively in whole or in part.

Yet, the appellate court prefaced its analysis by noting Davis's argument on appeal that he was "properly sentenced" the first time and was prejudiced because counsel's deficient performance caused him to be sentenced a second time—under erroneous instructions. (*Id.* at 307). With this information, it is apparent that the court reasonably applied *Strickland*. While *pro se* habeas petitions are entitled to a liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the court of appeals did not err in limiting its analysis to Davis's own articulation of how he was prejudiced by counsel's alleged deficiency. Davis, who had the burden of demonstrating prejudice under *Strickland*, 466 U.S. at 698, conceded that he was satisfied with his first sentencing recommendation and alleged that he was prejudiced by having to undergo a second penalty phase. In this sense, Davis was not prejudiced by the second penalty phase, because the second jury reached the same result as the first—which Davis felt was proper.

For example, in *Hill v. Lockhart*, the habeas petitioner argued that counsel was deficient for failing to accurately advise him of his parole eligibility when deciding to accept a plea deal, rendering his guilty plea involuntary. 474 U.S. 52, 54-55 (1985). The Supreme Court held that because the petitioner failed to allege "the kind of 'prejudice' necessary to satisfy" *Strickland* (i.e. that if the defendant was accurately advised he would have not accepted a plea deal and gone to trial), the district court did not err in declining to hold a hearing on his ineffective assistance of

counsel claim. *Id.* at 60. Like the petitioner in *Hill*, Davis alleged prejudice, but not in the way that would warrant habeas relief under *Strickland*. Davis did not allege that if counsel had briefed the sentencing issue, the outcome of the proceeding would have been different. Rather, he argued that counsel's failure to brief the issue caused him to be resentenced under erroneous instructions. Thus, the Kentucky Court of Appeals reasonably applied *Strickland* to find that Davis failed to demonstrate prejudice, and habeas relief based on this claim should be denied.

### D. Trial counsel did not render ineffective assistance by failing to object to and/or eliciting certain witness testimony.

Petitioner's next three claims involve assertions that his trial counsel either failed to object to or improperly elicited harmful testimony, which impacted the jury's sentencing recommendation. (R. 1, at 7-8, 11, 13, 14). Davis first argued that his trial counsel was deficient for failing to object to a line of questioning of defense expert Dr. Edward Connor which allegedly led him to improperly comment on Davis's credibility. (*Id.* at 8, 11, 13). More specifically, Davis argued that the prosecutor improperly cross-examined Dr. Connor, who testified that Davis likely suffered from extreme emotional disturbance ("EED") at the time of the incident, on whether variances in Davis's recounting of the events in multiple examinations indicated he was not telling the truth. (*See* R. 13-2, at 157-58). The prosecutor also asked Dr. Connor whether a defense attorney would have been aware that it was his routine practice to test patients for malingering by planting "nuggets" of information during the examinations, allegedly insinuating that defense counsel could have coached Defendant for his psychiatric evaluation. (*Id.* at 158).

Secondly, Davis argued that counsel was ineffective for failing to object to the testimony of the Commonwealth's expert, Dr. Timothy Allen, that Davis was not suffering from EED at the time of the incident. (R. 1, at 7, 8, 11, 14). For example, Dr. Allen testified that Davis behaved like an "angry, jilted lover" and like someone seeking revenge, rather than someone suffering from

EED. Thus, Davis argued in state court that Dr. Allen improperly opined on an ultimate question for the jury—Davis's mental state. (R. 13-2, at 162-63).

Lastly, Davis asserted that he was deprived of effective assistance of counsel because his trial counsel elicited testimony from Davis's ex-girlfriend, Pam Sanders, regarding a prior protective order she had taken out on Davis. Trial counsel allegedly compounded the harm by asking Ms. Sanders what she meant by Davis "ran into" her, to which she responded that Davis had run into her with a car. (R. 1, at 7, 8, 11, 13; R. 13-2 at 152-54). Davis alleged that the jury could view this testimony as evidence that Davis was a continuing danger. (R. 13-2, at 152).

For all three claims of ineffective counsel, Davis argued that the harmful testimony impacted his sentence. He asserted that although the EED defense was successful, the above testimony could have influenced the jury's deliberations during the penalty phase, recommending the maximum sentence as a result of their lingering doubts with respect to their EED finding. (R. 13-2, at 155-56, 161-62, 164).

Davis first raised the above three claims in the supplement to his RCr 11.42 motion, filed by counsel. (*Id.* at 143). In denying collateral relief based on these claims, the trial court held that Davis was not prejudiced in terms of the verdict phase of the trial, because his EED defense was successful. (*Id.* at 205). The court further reasoned that Davis did not suffer prejudice in the sentencing phase, because the testimony at issue was only presented to the first penalty jury, not the second. (*Id.* at 206-07). The trial court specifically held:

> This second jury had the option, by running Davis' sentences concurrently instead of consecutively, to cut Davis' sentence from thirty years to twenty years. They did not. Without hearing any of the testimony or argument which Davis contends was in error, the second jury reached the exact same sentence as the first, namely thirty years in prison.

(*Id.* at 206).

On appeal of this decision to the Kentucky Court of Appeals, Davis argued the trial court erred in holding that the testimony of Dr. Connor and Dr. Allen was not presented to the second penalty jury.  (*Id.* at 247-48).  Davis further argued that he suffered prejudice, because the testimony of the two psychologists, as well as that of Pam Sanders regarding the protective order, could have influenced the first jury to assign the maximum sentences for each conviction.  (*Id.* at 250-51).  He pointed out that although the second jury was empaneled, this jury was limited to recommending whether the sentences should run consecutively or concurrently.  (*Id.* at 251).

The Kentucky Court of Appeals, like the court below, ruled that Davis failed to demonstrate prejudice because his EED defense was successful, holding as follows:

> We agree with the circuit court.  Even if we were to assume that counsel performed deficiently in failing to object to the aforementioned evidence, Davis cannot show that he was prejudiced by counsel's failure to object for two reasons: (1) his extreme emotional disturbance defense was successful; and (2) the jury convicted him of the lesser-included offenses of first-degree manslaughter and attempted first-degree manslaughter.  Therefore, this claim lacks merit.

(*Id.* at 309).  The Kentucky Court of Appeals acknowledged Davis's argument that the testimony of the two psychologists was in fact presented to the second penalty jury but declared this argument moot in light of the court's finding that the testimony did not prejudice Davis's EED defense.  (*Id.*).  The court did not, however, address Davis's argument that he was prejudiced by his counsel's deficient performance because of the impact of the testimony on the jury's sentencing recommendation, as opposed to the jury's guilty verdict.

To reiterate, in order to demonstrate prejudice, a defendant must demonstrate a "reasonable probability" that but for counsel's errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  This requires a "substantial," not just "conceivable," likelihood of a different result.  *Cullen*, 563 U.S. at 189 (quoting *Richter*, 562 U.S. at 112).

AEDPA permits this Court to review the decision of the Kentucky Court of Appeals only for purposes of determining whether the state court's decision was "contrary to" or employed an "unreasonable application of" clearly established federal law as set forth by the Supreme Court, or whether the decision "was based on an unreasonable determination of the facts" based upon the evidence before the state court. 28 U.S.C. § 2254(d). With the *Strickland* test layered on top of the AEDPA standard, this Court must consider only "whether no fairminded jurists could disagree" that the arguments or theories that supported or could have supported the state court's decision are inconsistent with prior Supreme Court precedent. *Richter*, 562 U.S. at 102.

It is without question that the court of appeals addressed the merits of Davis's ineffective assistance of counsel claims regarding the trial testimony of the two psychologists and Pam Sanders, regardless of whether the court addressed Davis's particular theory of prejudice. *See Richter*, 562 U.S. at 98 (noting that "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated."). Thus, the opinion of the Kentucky Court of Appeals will be afforded deferential review under AEDPA.

Davis has not demonstrated that the opinion of the Kentucky Court of Appeals "necessarily involved an unreasonable application of federal law." *Cullen*, 563 U.S. at 190. The court of appeals rejected Davis's claim under the prejudice prong of *Strickland*, reasoning that Davis could not demonstrate his counsel's failure to object to the testimony in question—relating to his EED defense—resulted in prejudice, because the defense was ultimately successful. This finding is consistent with *Strickland*'s requirement that a defendant demonstrate that but for counsel's error, there is a reasonable probability the outcome of the proceeding would have been different. *Strickland,* 466 U.S. at 689. The fact that the court did not address Davis's theory of prejudice— that counsel's failure to object to the testimony influenced the jury's decision to recommend the

maximum sentence—does not change this analysis. This is because there is no Supreme Court precedent requiring courts to apply *Strickland* in that way. *See Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (holding that "[b]ecause none of our cases confront the specific question presented by this case, the state court's decision could not be 'contrary to' any holding from this Court" and noting that "if the circumstances of a case are only 'similar to' our precedents" the state court's decision cannot be contrary to the holdings of those cases); *see also Byrd v. Workman*, 645 F.3d 1159, 1170 (10th Cir. 2011). For example, in *Byrd*, the habeas petitioner argued that the state court of appeals unreasonably applied *Strickland*'s prejudice prong "because it did not specifically reject the possibility that the jury might have recommended a lesser sentence had it not been presented with his otherwise inadmissible, transactional felony convictions" that his attorney failed to object to. *Id.* The Tenth Circuit rejected this "novel argument," finding no Supreme Court precedent requiring the prejudice prong to be "applied in this manner." *Id.*

It is true that the Supreme Court has recognized a right to effective representation during sentencing. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1386 (2012) (citing *Glover v. United States*, 531 U.S. 198, 203 (2001)). Yet, Davis does not allege that his counsel erred with respect to his representation during the penalty phase. Rather, Davis argues that had counsel objected to trial testimony (unrelated to issues of sentencing, such as the appropriate application of sentencing guidelines), there is a reasonable probability the jury would have recommended some unknown, incrementally shorter sentence. *See Glover*, 531 U.S. at 204 (limiting its holding to cases where an error occurred in the sentencing calculation itself, rather than cases "where trial strategies, in retrospect, might be criticized for leading to a harsher sentence.").

In addition, the U.S. Supreme Court has held that federal courts do not typically review a sentence for a term of years that falls within the limits prescribed the state legislature. *See Hutto*

24

*v. Davis*, 454 U.S. 370, 373-74 (1982). The Supreme Court has established precedent governing ineffective assistance of counsel with respect to death penalty sentencing hearings; where the question of prejudice is whether, absent counsel's error, there is a reasonable probability the jury would not have assigned the death penalty. *See Strickland*, 466 U.S. at 695. Yet, the Supreme Court has not extended this application of the prejudice prong to non-capital cases. *See id.* ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence . . . the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."); *see also Harmelin*, 501 U.S. 957, 995 (1991) ("Our cases creating and clarifying the 'individualized capital sentencing doctrine' have repeatedly suggested there is no comparable requirement outside the capital context, because of the qualitative difference between death and all other penalties.").

In short, the decision of the Kentucky Court of Appeals finding Davis was not prejudiced by his trial attorney's failure to present challenges as to witnesses Drs. Connor and Allen, as well as Pam Sanders, was a reasonable application of established federal law. The court was not required by Supreme Court precedent to apply the *Strickland* prejudice prong to ask whether counsel's failure to object to the testimony impacted the jury's decision to recommend the maximum, thirty-year prison sentence. (R. 13-2, at 161). In addition, the state court's finding that Davis was not prejudiced by counsel's failure to object to testimony related to EED because the defense was successful was a reasonable application of *Strickland*. Because the state court did not unreasonably apply federal law with respect to its analysis of the prejudice prong of the *Strickland*

test, we need not consider whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

> **E.     Trial counsel did not render ineffective assistance by failing to object to the prosecutor's remarks to the penalty jury, and appellate counsel did not render ineffective assistance by failing to raise this issue on direct appeal.**

Lastly, Petitioner asserts that he received ineffective assistance of counsel when trial counsel failed to object to the prosecutor's allegedly improper remarks during the sentencing phase. (R. 1 at 8, 11, 13, 14). Relatedly, Davis argues his appellate counsel was ineffective for failing to raise this issue on direct appeal. (*Id.* at 8, 10, 14). Davis first raised these arguments in his supplemental RCr 11.42 motion, filed by counsel, where he argued that counsel was ineffective for failing to object to the prosecutor's comments to the jury during the penalty trial that they should not cut Davis another "break" since they already convicted him of the lesser included offenses of manslaughter and attempted manslaughter. (R. 13-2, at 165). Davis argued this comment amounted to prosecutorial misconduct and prejudiced him because it "insinuated to the jury the Commonwealth's disapproval of the given verdict." (*Id.* at 167). He further argued that his appellate counsel was ineffective for failing to raise the prosecutorial misconduct claim on direct appeal. (*Id.* at 168-74).

Following denial of his RCr 11.42 motion, Davis raised both of these issues on appeal to the Kentucky Court of Appeals. (*Id.* at 252-53). The court of appeals first rejected Davis's claim regarding appellate counsel's failure to raise the prosecutorial misconduct claim on direct appeal, finding that no prosecutorial misconduct occurred. (*Id.* at 306). The court properly identified the two-prong *Strickland* test for analyzing ineffective assistance of counsel claims. (*Id.* at 305). Then, relying on Kentucky caselaw, the court held that the prosecutor's comments were not improper, reasoning that the prosecutor's statements "were essentially attempts to persuade the

jurors that the matter should not be dealt with lightly" and that prosecutors have wide latitude during closing arguments. (*Id.* at 305-06) (citing *Brewer v. Commonwealth*, 206 S.W.3d 343 (Ky. 2006)). Because the court of appeals found that the prosecutor's comments were not improper, the court further held that the trial court did not abuse its discretion in finding that Davis did not suffer prejudice as a result of the comments. (*Id.* at 307). Based on the same reasoning, the court also denied Davis's claim that trial counsel was ineffective for failing to object to the prosecutor's comments. (*Id.* at 306).

The Court will afford the opinion of the Kentucky Court of Appeals deferential review under AEDPA. As the Supreme Court held in *Richter*, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication of state-law procedural principles to the contrary." 562 U.S. 86, 99 (2011). Davis raised these ineffective assistance of counsel claims with respect to his trial and appellate counsel as federal claims based on his Sixth Amendment right to effective assistance of counsel, relying on both state and federal caselaw governing prosecutorial misconduct. (*See, e.g.,* R. 13-2, at 236, 240, 253) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935); *United States v. Young*, 470 U.S. 1, 8 (1985)). Thus, it is presumed that the court of appeals denied Davis's federal claims on the merits.

Applying this deferential standard, is it apparent that the opinion of the Kentucky Court of Appeals was not contrary to or an unreasonable application of federal precedent. 28 U.S.C. § 2254(d). Although the court relied on state caselaw in finding that the prosecutor's comments were not improper, its reasoning was not contrary to clearly-established Supreme Court precedent. *See Mitchell v. Esparza*, 540 U.S. 12, 16 (2004) ("A state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite our opinions . . . We have

held that a state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'") (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). In addition, the court of appeals correctly identified and applied the *Strickland* test, which applies to ineffective assistance claims involving both trial and appellate counsel. *See Evitts v. Lucy*, 469 U.S. 387 (1985).

It is clearly established that when assessing a habeas petitioner's claim based on prosecutorial misconduct, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 636, 643 (1974)). The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). When evaluating the impact of the prosecutor's statements, a court must consider the extent to which the alleged misconduct mislead the jury or prejudiced the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See Young*, 470 U.S. at 11-12.

In his appellate brief to the Kentucky Court of Appeals, Davis pointed to the United States Supreme Court's holding in *United States v. Young* condemning comments by the prosecutor "vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused," as "such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." 470 U.S at 18

(citing *Berger v. United States*, 295 U.S. at 88-89).  In *Young*, the prosecutor stated, among other things, "I think [defense counsel] said that not anyone sitting at this table thinks that [the defendant] intended to defraud [the victim].  Well, I was sitting there and I think he was."  470 U.S. at 5.  The prosecutor further stated, "[y]ou can look at the evidence and you can remember the testimony, you remember what [the witnesses] said and what [respondent] admitted they said. I think it's a fraud."  *Id.*

Petitioner also pointed to the Supreme Court's holding in *Berger* that "improper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none."  295 U.S. at 88.  There, the prosecutor told the jury that *he knew* that a witness knew the defendant, "invit[ing] [the jury] to conclude that the witness . . . knew [the defendant] well but pretended otherwise; and that this was within the personal knowledge of the prosecuting attorney."  *Id.* at 87-88.

The Kentucky Court of Appeals was apparently not persuaded by Petitioner's argument that the prosecutor's statements were similar to those made in *Young* and *Berger* in that the prosecutor's statement not to give Davis another break "insinuated to the jury the Commonwealth's disapproval of the given verdict."  (R. 13-2, at 167).  Rather, the court held that the prosecutor's comments were merely "an attempt to persuade the jurors that the matter should not be dealt with lightly" and did not amount to prosecutorial misconduct.  (R. 13-2 at 306-07).  This finding is consistent with *Young* and *Berger*, in which the prosecutors blatantly expressed their personal opinions regarding the defendants' guilt or a witness's testimony.  Simply put, fairminded jurists could disagree on whether the prosecutor's comments constituted prosecutorial misconduct under clearly established federal law.  *Richter*, 562 U.S. at 102.  Furthermore, the instant case is distinguishable in that the prosecutor made the comments in question *after* the jury

had already rendered its guilty verdict, and thus it would have been reasonable for the Kentucky court to find the comments did not so "infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.[4]

Moreover, the holding of the Kentucky Court of Appeals that because the prosecutor's comments were not improper, Davis's ineffective assistance of counsel claims necessarily failed, is consistent with the clearly-established Supreme Court precedent that habeas relief is not warranted based on an attorney's alleged failure to raise a meritless objection, either during trial or on appeal. *See Lafler v. Cooper*, 566 U.S. 156, 167 (2012) ("Because the objection upon which his ineffective-assistance-of-counsel claim was premised was meritless, [the defendant] could not demonstrate error entitling him to relief."); *see also Evitts*, 469 U.S. at 394 (finding appellate counsel has no duty to raise meritless claims); *Davila v. Davis*, 137 U.S. 2058, 2067 (2017) ("In most cases, an unpreserved trial error will not be a plainly stronger ground for appeal than preserved errors."). Thus, the decision of the Kentucky Court of Appeals passes the "doubly" deferential standard, as there is a reasonable argument that Davis's trial and appellate attorneys satisfied *Strickland*'s deferential standard, despite not raising prosecutorial misconduct during the proceeding or on appeal. *Richter*, 562 U.S. at 105.

The Kentucky Court of Appeals also briefly addressed *Strickland's* prejudice prong, simply stating, "because the prosecutor's closing arguments were not improper, as discussed *supra*, [Petitioner's claim that he was prejudiced by the prosecutor's remarks] lacks merit." (R. 13-2, at 307). This finding is consistent with the *Strickland* test, which does not require a court to consider both prongs, after finding the ineffective assistance claim fails under one of the prongs. 466 U.S. at 967 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the

---

[4] *See also* discussion at Section II.D., *supra,* regarding the lack of Supreme Court precedent requiring federal habeas review of certain sentencing errors in non-capital cases.

inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one); *see also Hodges v. Colson*, 727 F.3d 517, 537 n.5 (6th Cir. 2013) ("[A]s a matter of logic, a finding that counsel's performance was not deficient implicitly, but unequivocally, encompasses a finding that the performance did not prejudice the defendant.").

Moreover, Davis has failed to demonstrate prejudice, even under *de novo* review. When a state court relies on one of the *Strickland* prongs (deficient performance or prejudice), courts in the Sixth Circuit apply *de novo* review to the unadjudicated prong. *Hodges*, 727 F.3d at 537. This is "despite the Supreme Court's holding in *Richter* to the contrary" that when a state adjudicates the merits of a claim, even without explanation, the deferential standard should be applied "whether or not the state court reveals which of the elements in a multipart claim it found insufficient." *Id.* at 537, 537 n.5 (citing *Richter*, 562 U.S. at 98). The prejudice prong of *Strickland* requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). In the context of a claim regarding deficient appellate counsel, the test is whether there is a reasonable probability that, but for counsel's failure to raise an issue, the defendant would have prevailed on appeal. *Smith v. Robbin*, 528 U.S. 259, 285 (2000).

In the instant case, the prosecutor made the allegedly improper comments—telling the jury not to give Davis another break—during the first penalty phase, after the jury reached its verdict of manslaughter and attempted manslaughter. The prosecutor did not make these or similar comments during the second penalty phase, with the newly-empaneled jury. (Sentencing Video 12-12-09 at 8:52:12-42). Nevertheless, the second penalty jury, like the first, recommended that

Davis's sentences of ten and twenty years run consecutively. This second penalty jury was limited to making a recommendation regarding whether the sentences should run consecutively or concurrently and was not permitted to disturb the length of the sentences, as set by the first penalty jury. However, when given the discretion to recommend a total sentence of twenty to thirty years based on whether the two sentences ran consecutively or concurrently, the second jury chose the maximum, without having heard the allegedly improper comments from the prosecutor. Thus, on its face, Davis has failed to demonstrate a reasonable likelihood of a different result of his trial (or the sentencing proceeding) or a reasonable likelihood of a different result on appeal, in light of the attenuated nature of his claim. Accordingly, habeas relief is not warranted based on these claims.

## III.    EVIDENTIARY HEARING AND CERTIFICATE OF APPEALABILITY

Davis is not entitled to an evidentiary hearing. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petitioner's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schiro v. Landrigan*, 560 U.S. 465, 474 (2007). When "the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* Davis has not identified any probative, additional evidence he could present at an evidentiary hearing. Davis does not propose any potential evidence that the Court is convinced could entitle him to overcome his procedural default. He has made no factual allegations that, "if true would entitle [him] to habeas relief." *Schriro*, 560 U.S. at 474. Accordingly, he is not entitled to an evidentiary hearing.

Likewise, Davis is not entitled to a Certificate of Appealability. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings for the United States District Courts, the District Court must issue or deny a certificate of appealability ("COA") when it enters a final order

adverse to the applicant. A certificate may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Petitioner's § 2254 Petition or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 237 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a certificate of appealability be denied upon the District Court's entry of its final order in this matter.

## IV.   CONCLUSION AND RECOMMENDATION

For the reasons stated herein, **IT IS RECOMMENDED** that:

1)   Petitioner Davis's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, including his request for evidentiary hearing (R. 1), **be denied** and this matter **be dismissed;**

2)   a Certificate of Appealability **be denied** by the District Court in conjunction with the Court's entry of its final order in this matter;

3)    Judgment in favor of the Respondent **be entered** contemporaneously with the District Court's entry of its final order; and

4)    this case **be stricken** from the active docket of this Court.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 950 (6th Cir. 1981).

Dated this 5th day of July, 2019.



Signed By:

*Candace J. Smith*

**United States Magistrate Judge**

J:\DATA\habeas petitions\2254 ineffective assistance counsel\16-114-DLB Davis R&R final.docx